IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTINA JANE MARQUIS,

        Plaintiff,

vs.                                    CASE NO. 1:13-cv-219-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability benefits.  Doc. 1.  The Commissioner has answered, Doc. 9, and both parties have filed briefs outlining their respective positions.  Docs. 15, 18.  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on December 11, 2006, alleging disability based on chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome, hypertension, back pain, diabetes mellitus type II, obstructive sleep apnea (OSA), and anxiety.  (R. 463, 467).   Plaintiff's application was denied initially and upon reconsideration.  (R. 57-63, 87-90).  Plaintiff requested and received a hearing before an ALJ, following which the ALJ issued a decision finding that Plaintiff was not disabled (R. 67-80).  On November 2, 2010, the Decision Review Board remanded the case for further proceedings because the transcript of the administrative hearing was missing

from the record. (R. 86).  Following a second hearing, the ALJ again determined that Plaintiff was not disabled.  (R. 11-22).  Specifically, the ALJ determined that Plaintiff had the severe impairments of COPD, carpal tunnel syndrome, hypertension, disorders of the spine, diabetes mellitus type II, OSA, obesity, and anxiety, but that her impairments, alone or in combination, did not meet or medically equal one of the listed impairments.  (R. 13).  The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a range of light work limited to: lifting and carrying twenty pounds occasionally and ten pounds frequently; a sit/stand option; no climbing of ladders or exposure to unprotected heights; no operation of heavy, moving machinery; no concentrated exposure to dust, fumes, and gases; and only occasional bending, kneeling, stooping, squatting, and crawling.  (R. 15).  The ALJ also included the following nonexertional limitations: a low stress position; no production requirements; simple tasks; and limited contact with the public.  (R. 15).

In determining Plaintiff's RFC, the ALJ assessed Plaintiff's credibility regarding her allegations of disabling pain and other limitations.  The ALJ found that Plaintiff's allegations "clearly exceed the evidence," and that her assertions of disabling pain were not supported by the medical evidence of record.  (R. 20).

Taking into account a vocational expert's (VE) testimony, the ALJ determined that Plaintiff could perform work that exists in that national economy including the representational unskilled jobs of office worker, mail clerk, and addresser.  (R. 22).  The Appeals Council denied review. (R. 1-4).

The instant appeal followed.  Plaintiff raises two issues for review:  (1) the ALJ failed to consider the combined effects of all of Plaintiff's impairments; and (2) the ALJ's

credibility finding violated the Eleventh Circuit's pain standard.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his RFC), age, education, and past work) prevent him from doing other work that exists in

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]   However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
      In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  RELEVANT MEDICAL RECORDS

Plaintiff's first argument on appeal asserts that in considering the effects of Plaintiff's impairments the ALJ failed to acknowledge or discuss Plaintiff's chronic pain syndrome; a provisional diagnosis of fibromyalgia; chronic neck pain;  chronic low  back pain; peripheral neuropathy of her lower extremities per electrodiagnosis; or pain disorder associated with both psychological factors and a general medical condition. Doc. 15 at 28-29.

The following records are relevant to Plaintiff's physical complaints and her arguments regarding the combined effects of such physical impairments, in particular her complaints of disabling pain.  In 2006 and 2007, Plaintiff saw Rosemary Maduka, M.D. for primary care.   Plaintiff reported back pain and migraines, and complained of coughing and chest congestion. She was diagnosed with COPD and advised to stop smoking.  She also reported anxiety, depression and difficulty sleeping.  She was advised to exercise, consume a high fiber diet, and lose weight.  (R. 552-75, 623-634).

In 2008 and 2009, Plaintiff received primary care at the Palms Medical Group.

---

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

She reported back and neck pain, swelling in her hands and feet, and other primary care concerns.  On November 9, 2009, Plaintiff reported neck, chest, and back pain. There was tenderness in the lumbar and cervical spine, and decreased range of motion in the thoracic spine.  (R. 707- 736).

Plaintiff also received treatment at North Florida Regional Medical Center.  In November 2009, x-rays of the cervical spine revealed moderate multilevel degenerative cervical spondylosis. (R.  807).  MRIs of her thoracic and lumbar spine in April 2010 showed no diskitis or osteomyelitis.  (R. 813).  In July 2010, an MRI of the cervical spine revealed disc protrusion with slight cord compression at C5-C6.  (R. 923). Imaging studies of the lumbar spine in November 2010 revealed L4-L5 mild disc bulge, and L5-S1 left paracentral disc osteophyte complex that abutted the origin of the left S1 nerve, which could potentially contribute to left S1 radiculopathy.  There was no foraminal stenosis. (R. 942).

Plaintiff presented to the ER in November 2010 complaining of chest pain.  Her discharge diagnosis was chronic pain syndrome, narcotic dependent.  (R. 913-1016).

In March 2011, Plaintiff had a cardiology consultation with Dr. Christopher Caputo who evaluated Plaintiff for passing out.  The diagnostic impressions included "chronic pain" as well as impressions related to her cardiac condition.  She was fitted with a monitor and the plan included scheduling for cardiac catheterization.  Ro. 832-33.

In January and February 2012, Plaintiff was seen at Palms Medical Group. Plaintiff reported musculoskeletal pain, bilateral leg pain, and back pain.   She had normal range of motion, normal strength, and stability in all extremities. There was no

pain with inspection.  She was referred to physical medicine and rehabilitation as well as pain management.  (R. 835-843).

On February 27, 2012, Plaintiff had an initial office visit with Wilda Murphy, M.D. of Southeastern Rehabilitation, upon referral from Plaintiff's primary care physician at Palms Medical Group.   Plaintiff completed a pain drawing, circling shoulders, right elbow, both hands, bilateral flanks, low back, trapezius areas, cervical area, knees, lower extremities, and feet. Plaintiff reported severe and continuous pain, rating her pain at 9/10.  Plaintiff reported that her symptoms were worsening.  (R. 1027-28).

Dr. Murphy performed a physical examination, noting increased lumbar lordosis upon examination of the spine.  Upon palpation, Dr. Murphy noted findings "compatible with possible fibromyalgia type picture with paracervical, thoracic, paralumbar tenderness.  Lateral elbows, medial knees, anterolateral thighs, and calves.  No signs or symptoms of DVT."  (R. 1028).   Neuroforaminal compression of cervical spine produced neck and back pain without radiation.  Cervical range of motion was essentially full, but with pain posturing and pain behaviors.  Lumbar exam revealed forward flexion of 45 degrees, with pain posturing.  Her motor strength was 5/5.  Her gait was mildly antalgic.  (R. 1029).

Dr. Murphy's diagnostic impression following her examination was "compatible with possible fibromyalgia type syndrome; complaints of chronic neck and back pain with associated complaints of numbness, tingling and weakness of the hands and feet; multiple medical problems."  (R. 1029-30).  The treatment plan included electrodiagnostic studies.  Plaintiff reported that she had never taken Lyrica and was currently on Gabapentin.  (R. 1030).

X-rays of Plaintiff's cervical spine revealed moderate degenerative disc disease, and x-rays of her lumbar spine revealed mild scoliosis, multilevel degenerative disc disease, mild articular arthropathy, and degenerative cupping and wedging of lower thoracic vertebrate on L1.   (R. 1030).

At a return visit on March 7, 2012, Plaintiff  was "very pleasant" and appeared comfortable.  There was no pain posturing or pain behavior.  Her calf muscles were strong.  There was decreased sensation in her feet and hands. Electrodiagnostic studies revealed polyneuropathy to the bilateral lower extremities, primarily sensory. There was no evidence of lumbosacral radiculopathy in the lower extremities.  Dr. Murphy's diagnostic impressions were "chronic pain syndrome, rule out fibromyalgia"; chronic neck pain; chronic low back pain; peripheral neuropathy to lower extremities; obesity, and multiple medical comorbidities.  The treatment plan included adjusting Plaintiff's Gabapentin for neuropathy pain and chronic pain, and prescribing Cymbalta for neuropathic pain and mood disorder.  Dr. Murphy discussed weight loss, daily exercise, and smoking cessation.   (Doc. 1024-33).

## IV.  DISCUSSION

As noted above, the ALJ determined that Plaintiff had the severe impairments of COPD, carpal tunnel syndrome, hypertension, disorders of the spine, diabetes mellitus type II, OSA, obesity, and anxiety. (R. 13). The ALJ determined that Plaintiff had the RFC to perform a range of light work with certain exertional and nonexertional impairments.   The ALJ found Plaintiff's assertions of disabling pain to be not credible. (R. 15).

The ALJ's decision does not reference Dr. Murphy's examination findings, which

Dr. Murphy assessed as "compatible with possible fibromyalgia type syndrome," based upon palpation revealing positive findings at several points.  (R. 1028-29).  The ALJ did not mention Dr. Murphy's determination that Plaintiff's neuropathic and chronic pain should be treated with Gabapentin and Cymbalta.  (R. 1026).  In the context of Plaintiff's complaints of disabling pain, the ALJ's discussion of Dr. Murphy's examination states only that Dr. Murphy "recommended daily exercise and weight loss. Obviously, Dr. Murphy does not believe the claimant needs to spend 20 hours a day in bed."  (R. 20).

The ALJ's failure to acknowledge Dr. Murphy's findings that would support Plaintiff's complaints of disabling pain is troubling.  Dr. Murphy's notes reflect that Plaintiff's condition merited treatment of neuropathic and chronic pain with medication, not merely that Dr. Murphy advised Plaintiff to exercise and lose weight.  (R. 1026). Further, the ALJ discredited Plaintiff's statements to Dr. Murphy that she was in constant pain on her first visit because she did not exhibit pain behavior on her second visit.  (R. 20).  In doing so, the ALJ again did not mention Dr. Murphy's physical examination findings suggesting that Plaintiff experienced pain compatible with fibromyalgia, nor did the ALJ mention Dr. Murphy's decision *at the second visit* that Plaintiff's neuropathic and chronic pain should be treated.  *See id.*

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[21]   In this case, the ALJ's decision is silent with respect to the

---

[21] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.

weight afforded to the medical evidence contained in Dr. Murphy's notes that would support Plaintiff's pain complaints.  The ALJ's findings implicitly reject Dr. Murphy's medical evidence that supports such claims, while adopting only the portions of Dr. Murphy's findings that support the ALJ's negative credibility finding.  The ALJ's failure to mention the existence of Dr. Murphy's medical evidence that supports Plaintiff's claims, let alone to weigh the evidence or explain its significance, requires reversal for further proceedings.   Because the issue of Plaintiff's RFC necessarily will be revisited upon remand, including issues regarding the credibility of her complaints of disabling pain, it is unnecessary to address Plaintiff's remaining argument in this appeal challenging the ALJ's credibility assessment.

## V.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Report and Recommendation, and that the Clerk be directed to enter final judgment in favor of the Plaintiff and to close the file.

**IN CHAMBERS** in Gainesville, Florida, on February 17 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.